**FILED**

AUG 18 2008

Clerk, U.S. District and
Bankruptcy Courts

# United States District Court
# For The District of Columbia

| | |
|---|---|
| **KEITH L. DUNN** | ) |
|     **Fed. Reg. No. 18046-016** | ) |
|     **USP Hazelton** | ) |
|     **Federal Correctional Institution** | |
|     **P.O. Box 2000** | |
|     **Bruceton Mills, WV  26525** | |

Case: 1:08-cv-01432
Assigned To : Collyer, Rosemary M.
Assign. Date : 8/18/2008
Description: Pro Se Gen. Civil

| | |
|---|---|
|       **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **EDWARD F. REILLY, JR. Chairman of the** | ) |
| **United States Parole Commission,** | ) |
| | ) |
| **CRANSTON J. MITCHELL, Commissioner of the** | ) |
| **United States Parole Commission,** | ) |
| | ) |
| **DEBORAH A. SPAGNOLI, Commissioner of the** | ) |
| **United States Parole Commission,** | ) |
| | ) |
| **PATRICIA K. CUSHWA, Commissioner of the** | ) |
| **United States Parole Commission,** | ) |
| | ) |
| **ISAAC FULWOOD, JR., Commissioner of the** | ) |
| **Untied States Parole Commission,** | ) |
| | ) |
|     **United States Parole Commission** | ) |

**Civil Action No.:**

**Judge:**

1

**5550 Friendship Boulevard, Suite 420**                    )

**Chevy Chase, MD  20815-7286**                              )

                                                            )

                                **Defendants.**              )

---

## CIVIL COMPLAINT

This is a civil action brought by Keith L. Dunn who was convicted of violating the District of Columbia Code of 2nd Degree Murder.  Plaintiff is confined in Federal Correctional Institution. Defendants are the Chairman and /or Commissioners of the Untied States Parole Commission (the "Commission") and, as such, they their predecessors, or designees are and were responsible for considering and acting upon Plaintiff's Request for Parole.  Plaintiff has been and continues to be subjected to various injurious acts by the Defendants, who have repeatedly and improperly denied Plaintiffs request for parole Plaintiff seeks declaratory and injunctive relief.

## JURISDICTION

1.      Plaintiff seeks to vindicate rights protected by the Ex Post Facto Clause of Article 1, Section  9 of the United States Constitution, the Fifth and Fourteenth Amendments to the United States Constitution, and Federal law.  This court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3),(a)(4), (b)(1) and 42 U.S.C. § 1983.

2.      This court has jurisdiction to declare the rights of the parties and to grant all further relief found necessary and proper.

2

3.      This Court has the authority to grant declaratory relief pursuant to 28 USC § §
2201 and 2202.

## VENUE

4.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1291(b).

## PARTIES

5.      Plaintiff Keith L. Dunn is confined at the Federal Correctional Institution in
Bruceton Mills, West Virginia pursuant to a sentence imposed on March 2, 1989 by the Superior
Court of the District of Columbia.

6.      Defendant Edward F. Reily, Jr. is current Chairman of the Commission.

7.      Defendant Patricia K. Cushwa is current Commissioner of the Commission.

8.      Defendant Isaac Fulwood, Jr. is current Commissioner of the Commission.

9.      Defendant Cranston J. Mitchell is current Commissioner of the Commission.

10.     Defendant Deborah A. Spagnoli is a current Commissioner of the Commission.

11.    Defendants, as the Chairman and/or Commissioner of the Commission were and are responsible for reviewing and acting upon Plaintiff's request for parole in accordance with the United States Constitution and Federal law and regulations.

## INTRODUCTION

12.    Plaintiff is serving sentence imposed by the Superior Court of the District of Columbia for a specific violation of the District of Columbia Code. At the time the Plaintiff committed the crime for which he was convicted and sentenced, authority for parole decision for D.C. Code Violators was vested in the District of Columbia Parole Board (the "Parole Board").

13.    On August 5, 1997, Congress enacted the National Capital Revitalization and Self-Government Improvement Act (the "Revitalization Act") Pub. L. No. 105-33 § 11231, 111 Stat. 712 (1997).

14.    The Revitalization Act abolished the Parole Board, *see* Pub. L. No. 105-33 § 11231(b), and directed the Defendants, as the Chairman and Commissioner of the Commission, to conduct parole hearings for D.C. code prisoners "pursuant to the parole laws and regulations of the District of Columbia," *id.* § 11231(c).

15.    On August 5, 1998, Defendants assumed the responsibility for making parole-release decisions for all eligible D.C. Code felons, pursuant to the Revitalization Act.

4

16.    In 2000, despite the requirements of the Revitalization Act that the Defendants apply the parole statutes, regulations, guidelines, and practices of the Parole Board, the Defendants published new parole rules, regulations and guidelines that they deemed applicable to any D.C. code inmate receiving an initial parole hearing after August 5, 1998 (the "2000 Guidelines") *See* 28 CFR § 2.80(a)(5).

17.    For inmates who had an initial parole hearing date prior to August 5, 2008, the Defendants chose to apply the Parole Board's Guidelines, *See* C.F.R. § 2.80 (a)(4). For all other inmates, some variation of the Defendants' 2000 Guidelines apply. *See id.* § 2.80(a)(1) and (5).

## I.   REGULATORY PROCESS FOR PAROLE DECISIONS FOR DISTRICT OF COLUMBIA INMATES AT THE TIME OF PLAINTIFF'S CONVICTION AND SENTENCE

18.    Prior to 1998, at the time that Plaintiff committed the crimes for which he is currently imprisoned and at the time that he was sentenced, the Parole Board administered parole proceedings for D.C. Code violators in the custody of the District of Columbia.

19.    Prior to 1998, when D.C. Code offenders were in custody of the United States Government, the Commission administered their parole hearings, but in such circumstances, the Commission was required to apply the Parole Board's regulations, guidelines, policies, and practices, which where found by this Court to have the force and effect of the law.

20.    Under the Parole Board's statutes regulations, guidelines, policies, and practices, the "minimums sentence" for a crime i.e., the period that an inmate must serve before he or she is eligible for parole, satisfied the inmate's accountability for the offense of conviction.

21.    In conducting parole hearings and making parole determinations, the Parole Board applied mandatory guidelines, many of which were codified as municipal regulations, that carefully prescribed the method and criteria that the Parole Board use to render decisions on parole requests.  As its guide for determining whether an incarcerated individual would be paroled or re-paroled, the Parole board used the criteria set fourth in the guidelines.

22.    At the time that the Plaintiff committed the crimes for which he is currently imprisoned,  and at the time of his sentence for the crime, the Parole Board made parole decision for D.C. Code offenders using guidelines that it formally adopted in 1985, and published in the District of Columbia Municipal Regulations in 1987 (the "1987 Guidelines").

23.    In 1991, to ensure consistent and equitable application of the 1987 Guidelines and other parole regulations, the Parole Board adopted a Policy Guideline defining terms used in the 1987 Guidelines (the "1991 Policy Guidelines").  The 1991 Policy Guideline applied to all request for parole heard by the Parole Board.

24.    The 1987 Guidelines required the Parole Board to calculate a Salient Factor Score ("SFS") for each prisoner.  Based on a parole applicant's SFS, the Parole Board then calculated a "total point score", using pre- and post-incarceration factors, on which it based its decision to

6

either grant or deny parole. In "unusual circumstances", when mitigating and/or countervailing factors applied, the Parole Board could depart from an action (to grant or deny parole) otherwise indicated by an inmate's total point score.

25.    In the case of an initial parole hearing, the 1987 Guidelines state that:

After determining an adult parole candidate's SFS score and after applying the pre and post incarceration factors to arrive at a total point score pursuant to § 204 and Appendix 2-1, the Board shall take one (1) of the following actions:

(a) IF POINTS = 0:        Parole shall be granted at initial hearing with low level of supervision required; .

(b) IF POINTS = 1:        Parole shall be granted at initial hearing with high level of supervision required;

(c) IF POINTS = 2:        Parole shall be granted at initial hearing with highest level of supervision required; or

(d) IF POINTS = 3-5:     Parole shall be denied at initial hearing and rehearing scheduled.

26.    In the case of parole rehearing, the 1987 Guidelines state that:

In determining whether to release on parole an adult or a youth offender appearing before the Board at a parole Rehearing, *the Board shall take the*

*total point score from the initial hearing* and adjust that score according to the institutional record of the candidate since that the last hearing pursuant to Appendix 2-2. The Board shall then take one of the following actions:

(a) IF POINTS = 0-3:    Parole shall be granted at this hearing with the highest level of supervision required; or

(b) IF POINTS = 4-5:    Parole shall be denied and a rehearing date scheduled.

27.    The 1987 Guidelines directed the Parole Board to grant parole to an adult at a parole rehearing if the final adjusted score is less than four, except in "unusual circumstances" as discussed *infra.* ¶¶ 40-42.

28.    The manner is which the "institutional record of the candidate" is used to adjust the total pint score from initial hearing, as required by 28 D.C.M.R. § 204.21, also is the subject of precise guidelines adopted by the Parole Board. The adjustment is done via the "point grid" in Appendices 2-1 and 2-2 of title 28 of the District of Columbia Municipal Regulations. Appendix 2-1 is used to calculate an inmate's SFS and total point score at the initial parole hearing, and Appendix 2-2 is used to calculate an inmate's SFS and total point score at a parole rehearing.

29.    Pursuant to Appendices 2-1 and 2-2 of the Parole Board Guidelines, in parole hearings, one point can be added to an inmate's total point score for "negative institutional behavior."

30.    In section VI.A.1 of 1991 Policy Guideline, the Parole Board defined the types of institutional disciplinary actions that would quality as "negative institutional behavior":

1.    **Negative Institutional Behavior** consists of serious or repeated major disciplinary infractions as described below that are sanctioned under Department of Corrections due process procedures.

a.    In INITIAL PAROLE CONSIDERATION cases, the following disciplinary infractions shall ordinarily be considered as negative institutional behavior:

(1)    One Class I Offense for murder, manslaughter, kidnapping, armed robbery or first degree burglary at any time during the minimum sentence (see DCMR 28-502.3, May 1987) OR

(2)    One Class I Offense.... *during the 12 months preceding the hearing OR during the last half of the minimum sentence up to a period of three years, whichever is longer; OR*

(3)    Two Class II Offenses....*during the 12 months preceding the hearing OR during the last half of the minimum sentence up to a period of three years, whichever is longer*

9

b.    IN PAROLE RECONSIDERATION cases, the following disciplinary

infractions occurring *since the preceding release consideration on the sentence*

shall ordinarily be considered as negative institutional behavior:

(1)    One Class I Offense (see DCMR 28-502.3 through 502.17, May

1987) ; OR

(2)    Two Class II Offenses (see DCMR 28-503.2 through 503.12 May

1987).

31.    Pursuant to Appendices 2-1 and 2-2, in parole hearings, one point can be

subtracted from an inmate's total point score for "Program Achievement" (referred to in the 1991

Policy Guideline as "sustained program or work assignment achievement").

32.    Section VI(A)(2)(a) of the 1991 Guideline defines "sustained program or work

assignment achievement" for purposes of Appendix 2-1 as:

IN INITIAL PAROLE CONSIDERATION cases, the following accomplishments

shall ordinary be considered as sustained program or work assignment

achievement during the period of incarceration:

(1)    Successful completion of one or two educational or vocational

programs, or program levels, each of which enables the offender to

10

develop an academic or job-related skill, OR enabled the offender to

progress to a higher level of difficulty or skill in the program area.

33.    For purposes of parole rehearing under Appendix 2-2 of the 1987 Guidelines

Section VI(A)(2)(b) of the 1991 Policy Guidelines defines "sustained program or work

assignment achievement": In PAROLE RECONSIDERATION cases, the accomplishments set

fourth in Section VI-A 2(a) of this policy shall ordinarily be considered as sustained program or

work assignment achievement where completion occurred since the preceding consideration for

release on the sentence."

34.    The "negative institutional behavior" and "program achievement" factors

correspond to two findings required by Appendices 2-1 and 2-2: "Has the offender committed

serious infractions (adjudicated under Department of Correction due process procedures)?" and

"Has the offender demonstrated sustained achievement in the area of prison programs, industries

or work assignments during this period of incarceration?"

35.    As noted above, the Parole Board could depart from the result dictated by sections

204.19 and 204.21 only in "unusual circumstances", and when it followed particular procedures:

Any parole release decision falling outside the numerically determined guideline

should be explained by reference to the specific aggravating or mitigating factors

as stated in Appendices 2-1 and 2-2. Section 204.22 of the District of Columbia

Municipal Regulations provided that:

11

The Board may, *in unusual circumstances*, waive the SFS and the pre and

post incarceration factors [which comprise the total point score] set forth

in this chapter to grant or deny parole to a parole candidate.  In that case,

the Board shall specify in writing those factors which it used to depart

from the strict application of the provisions of the is chapter.

36.    In the 1991 Policy Guidelines, the Parole Board further defined the scope of its

authority to deny parole for "unusual circumstances" when a point score indicated that parole

should be granted.    Section VI(C) of the 1991 Policy Guideline,    titled "FACTORS

COUNTERVAILING A RECOMMENDATION TO GRANT PAROLE," lists and defines the

following to constitute "unusual circumstances" countervailing a grant of parole:

   a.    Repeated Failure Under Parole Supervision;

   b.    On going Criminal Behavior;

   c.    Lengthy History of Criminal-Related Alcohol Abuse;

   d.    History of Repetitive Sophisticated Criminal Behavior;

   e.    Unusually Extensive or Serious Prior Record;

   f.    Instant Offense Involved Unusual Cruelty to Victims, which

         applied where the offense involved physical, mental, or emotional

         abuse beyond the degree needed to sustain a conviction on the

         instant offense or especially vulnerable victims such as children or

         elderly persons; and

g.       Repeated or Extremely Serious Negative Institutional Behavior.

37.     The Parole Board further defined these "unusual circumstances" in the 1991
Policy Guideline and established objective criteria to determine their applicability.

## II.    **THE PAROLE REGULATIONS USED BY DEFENDANTS**

38.     As noted above, the Revitalization Act abolished the D.C. Parole Board and
directed the Federal Parole Commission to conduct Parole Hearings for the District of Columbia
offenders according to the parole statutes, regulations, guidelines policies, and practices of the
District of Columbia.

39.     After the Commission assumed responsibility for parole hearings for D.C. Code
offenders, the Commission adopted the 2000 Guidelines and determined that those guidelines
would apply to any D.C. Code offenders that had not received an initial parole haring as of
August 5, 1998.

40.     Unlike the Parole Board's statutes, regulations, guidelines, policies, and practices,
the Commission's 2000 Guidelines and parole eligibility criteria do not consider the completion
of a prisoner's "minimum sentence" as satisfying offense accountability.  Instead, the
Commission and its designees have repeatedly denied D.C. inmates request for parole, to include
plaintiff **Keith L. Dunn**, on the grounds that they believe that inmates have not served enough

time for his offense, i.e., that the inmate has not been incarcerated long enough to satisfy the accountability for his offense.

## A. **PAROLE ELIGIBILITY**

41.    To account for the nature and circumstances of parole applicant's offenses, and the history and characteristics of the prisoner, the 2000 Guidelines contain instructions for the rating of certain offenses.    Chapter 1 through 12 § 2.20 of the Commission Rules and Procedures comprises the Commission's offense severity index.

42.    Like the 1987 Guidelines, the 2000 Guidelines requires the Commission to determine a Salient Factor Score (SFS) for each parole applicant, which is based upon factors such as prior convictions/adjudications, prior commitments of more than 30 days, age at current offense/prior        commitments,        recent        commitment-free        period, probation/parole/confinement/escape status at the time of the current offense, and the age of offender.    The Commission guidelines however, also allow the Commission [to] take into account any substantial information available to it in establishing the prisoner's offense severity rating, salient factor score, and many aggravating or mitigating circumstances, provided the prisoner is apprised of the information and afforded an opportunity to respond."    Under the Commission guidelines, the SFS becomes a part of a Base Point Score ("BPS") which is comprised of these categories in which points are assigned according to the following factors:

Category I:     Risk of Recidivism (Based on the Salient Factor Score)

Category II:    Current or Prior Violence

Category III:   Death of Victim or High Level of Violence

(Although the Parole Board guidelines also require the formulation of an SFS for parole applicants, the Parole Board used the SFS only to determine the risk of recidivism on the part of parole applicants. The Parole Board did not use the SFS as the basis for an increase in the period of imprisonment the inmate had to serve to demonstrated parole suitability.

43.    The Commission's method of determining parole eligibility is to apply the BPS (the combination of points assigned from categories I-III) to the appropriate category of offense behavior, then to *add the* corresponding number of *months to a parole applicant's minimum sentence* (the number of months an inmate must serve before becoming eligible for parole), based on the offense severity index. The months added to the parole applicant's minimum sentence based on the BPS are considered to be the "Base Guideline Range", and are used by the Commission and its designees to determine the additional months of imprisonment that the inmate must serve above the months that the Parole Board required for parole eligibility.

### 1.    Program Achievement

44.    Pursuant to Section 2.80 (e)(1) of the Commission's guidelines, the Commission "shall assess whether the prisoner has demonstrated ordinary or superior achievement in the area of prison programs, industries, or work assignments while under confinement for the

15

current offense." Under the structure, the Commission has sole discretion of determining whether the parole applicant's work and program achievements are to be considered "superior" or "ordinary". Per the Commission's guideline, "if superior achievement is found, the award for superior program achievement shall be one-third of the number of months during which the prisoner demonstrated superior program achievement." (The Parole Board guidelines, on the other hand, use as objective standard to reward "Sustained Program Achievement or Work Assignment Achievement", and an award is granted even for what the Commission might consider "ordinary" achievement).

### 2.    Institutional Behavior

45.    The Commission's guidelines, like those of the Parole Board, take an inmate's institutional behavior into account for purposes of parole determinations.  Unlike the Parole Board's guidelines, the 2000 Guidelines determine a range of months that the Commission adds to an inmate's minimum sentence under the provisions of 28 C.F.R. § 2.36 "for any significant disciplinary infractions since the beginning of confinement on the current offense in the case of an initial hearing, and since the last hearing in the case of a rehearing." 28 C.F.R. §2.80 (j).

46.    Unlike the Parole Board's guidelines 28 C.F.R. §§ 2.80 (j) and 2.36 do not limit consideration at initial parole hearings of institutional behavior within the three years prior to the parole hearing.

**B.    DETERMINING WHETHER TO GRANT PAROLE**

46.    The "Total Guideline Range" (the ultimate determination of time to be served to established presumptive suitability for parole pursuant to the Commission's guidelines structure) is reached by adding: "the minimum of the base point guideline range, the number of months required by the prisoner's parole eligibility date, and the minimum of the guideline range for disciplinary in fractions, if applicable. Then subtract award for superior program achievement, if applicable."

47.    After calculating an inmate's Total Guideline Range, under the 2000 Guidelines, the Commission "may, in unusual circumstances, grant or deny parole to a prisoner notwithstanding the guidelines." 28. C.F.R. § 2.80(n).

48.    28 C.F.R. § 2.80(n) defines "unusual circumstances for purposes of the 2000 Guidelines and provides example similar to those applied by the Parole Board, but without the definitions of such unusual circumstances the Parole Board adopted in the 1991 Policy Guideline to ensure consistency in parole determinations.

49.    Pursuant to section 2.80 (a)(4) of the Commission's guidelines regarding D.C. Code offenders, the Commission's guideline apply to "all prisoners who are given initial parole hearings on or after August 5, 1998. For prisoners whose initial hearings were held prior to August 5, 1998, the Commission shall render its decisions by reference to the guidelines, applied by the D.C. Board of Parole." Thus, regardless of the statues, regulations, guidelines,

17

policies, and practices in effect when an offender committed his or her crime and was sentenced, the offender's fitness for parole may hinge arbitrarily upon the date of his or her initial parole hearing.

III.    **PLAINTIFF KEITH L. DUNN'S PAROLE HEARING**

A.    **DEFENDANTS USE OF 2000 GUIDELINES.**

50.    On March 6, 1995, the Superior Court of District of Columbia sentenced Plaintiff **Keith L. Dunn** to imprisonment for a term of fifteen to forty-five years for one count of second degree murder.

51.    Under the statutes, regulations, guidelines, policies, and practices of the Parole Board, Mr. Dunn became eligible for parole on January 31, 2003 when he had served 115 months, which was his "minimum sentence", "i.e. the period Mr. Dunn had to serve before becoming eligible for parole for his sentence of fifteen to forty-five years. Under the Parole Board's statute, regulation, guidelines, policies, and practices, the minimum sentence represents the period that an inmate needed to serve to satisfy the inmate's offense accountability for the offense itself.

52.    On January 31, 2003, a parole examiner appointed by Defendants conducted Mr. Dunn's initial parole hearing.

53.     Rather than apply the Parole Board's regulation, policies, and practices with respect to offense accountability, Defendants and parole examiner conducted Mr. Dunn's initial Parole hearing under the Commission 2000 Guidelines.

54.     Under the 2000 Guidelines, Defendant took Mr. Dunn's "minimum sentence" of 115 months, calculated a Base Point Score using Mr. Dunn's offense characteristics and assigned Mr. Dunn as Base Point Guideline Range of 18-24 months that Mr. Dunn would have to serve, in addition to the minimum sentence to satisfy offense accountability.

55.     Mr. Dunn received a 60 month set off at his 2003 initial hearing and was scheduled for rehearing on February 2008, no reason was given for parole denial by Defendants.

56.     February 1, 2008, Mr. Dunn again was seen by Defendants at a rehearing where it was determined by parole Commission that parole would again be denied and continue a three year reconsideration hearing in February 2011.  There was no reason given for the denial.

57.     Upon Mr. Dunn filing a letter of reconsideration he was granted a 12 month reduction in the guideline range for his program accomplishments, but the Parole Board still denied his parole and maintained the decision to give Mr. Dunn a three year rehearing in February 2011. Once again, no reason was given for the denial.

58.     Although Mr. Dunn's minimum sentence (the period of incarceration Mr. Dunn had to serve to become eligible for parole) under the Parole Boards statutes, regulations,

guidelines, policies, and practices was 140 months. After defendants increased the minimum sentence by the Base Point Score Guidelines Range and reduced it by a 12 month period based on Mr. Dunn's Superior Program Achievements. Mr. Dunn total Guideline Range was 163-213 months.

59.    Because Mr. Dunn was now 16 months beyond the bottom of his Total Guideline Range, whereby he had 175 months of the 163 months required by the newly calculated guidelines range there was no criteria for an denial. There existed no unusual circumstances and Defendants gave no reason for the denial, nor for going outside the guideline range.

60.    During Mr. Dunn's initial parole hearing he was given a 5 year setoff. Defendant's Notice of Action explained that their decision to deny Mr. Dunn's initial parole application was based on the fact that a decision outside the Total Guideline Range at this consideration is not found warranted. (*See February 22, 2003 Action Sheet*). Once again at the Rehearing in 2008 Mr. Dunn was given a three year set off and parole was denied. (S*ee 2008 Action Sheet*).

## B.    MR. DUNN'S RIGHTS UNDER THE PAROLE BOARD'S 1987, 1991 POLICY GUIDELINES

61.    Under the Parole Board's statutes, regulations, guidelines, policies, and practices, Mr. Dunn satisfied offense accountability after serving the minimum sentence of 120 months (10.0 years), which would have been in February 2003.

62.    As indicated above, the D.C. Parole Board's Guidelines do not provide for increasing an offender's minimum sentence by considering formalities offense accountability guidelines. Defendants have severely increased the time that Mr. Dunn would have served, based on the application of their 2000 Guidelines, under which Mr. Dunn sentence was increased by 1.5 years to 2 years based on the offense severity Base Point Guidelines Range.

63.    Under the Parole Board Guidelines, the Defendant continues to use their own guidelines rather than applying the Parole Board's 1987 Guidelines and 1991 Policy Guidelines under which an offender's minimum sentence satisfies offense accountability. This practice of their own guidelines increases the risk that Mr. Dunn will serve and has severed a longer period of incarceration intended by the Parole Guidelines that were in effect when he committed his crime and was sentenced. As a result, the Defendants have violated the Ex Post Facto Clause of the United States Constitution.

## **RELIEF REQUESTED**

Wherefore Plaintiff respectfully request that this Court;

1.    require the Defendants to apply the Parole Board's statutes, regulations, guidelines, policies, and practices, including, but not limited to the 1987 Guidelines and the 1991 Policy Guidelines, to Plaintiff's request for parole;

2.    deems that the Plaintiff service of his sentence to his parole eligibility date satisfy the offense accountability for parole consideration purposes;

21

3.     order the Defendants to reconsider the decision rendered on Plaintiffs application for parole based on the existing record in a manner consistent with D.C. Parole Board's 1987 Guidelines, 1991 Policy Guideline, the other statutes, regulations, guidelines, policies, and practices of the Parole Board, federal regulations, the constitution, and all other requirements of law;

4.     award all Plaintiff's attorney fees and litigation expenses; and

5.     grant such other and further relief as the Courts deems appropriate.

Date: Aug 18, 2008                          Respectfully submitted,

                                            Keith L. Dunn, Register No. 18046-016
                                            United States Penitentiary Hazelton
                                            P.O. Box 2000
                                            Bruceton Mills, West Virginia 26525



**U.S. DEPARTMENT OF JUSTICE**
**United States Parole Commission**

*5550 Friendship Boulevard*
*Chevy Chase, Maryland 20815-7201*
*Telephone: (301)492-5821*
*Facsimile: (301)492-5525*

May 28, 2008

Mr. Keith Dunn 18046-016
Hazelton USP
P. O. Box 2000
Bruceton Mills, WV 26525

Dear Mr. Dunn:

This is in response to your letters of March 31, 2008 addressed to the Commissioners. Your request to reopen your case and grant parole is denied. However, the Commissioners agreed that your accomplishments in prison were not properly recognized by way of a reduction in the guideline range applied to your case. You should have received the Notice of Action dated May 21, 2008 (copy attached). That Notice grants you a 12 month reduction in the guideline range for your program accomplishments. There is no change in the decision to deny release on parole and continue to a 3 year rehearing in February 2011.

I encourage you to continue the good prison record you have maintained in the past. That record will be an important part of what is considered at your next hearing.

Sincerely,

Edward F. Reilly, Jr.
Chairman

EFR/JRH

U.S. Department of Justice                          **Notice of Action**
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201



---

Name: DUNN, Keith                          Institution: Hazelton USP
Register Number: 18046-016
DCDC No: 259-857                           Date:      May 21, 2008

---

In the case of the above-named, the following action was ordered:

Amend Notice of Action dated February 21, 2008 to show a 12 month guideline reduction for Superior
Program Achievement. The total guideline range is changed to 163-213 months. All other provisions of
that Notice of Action remain in effect, including the decision to deny parole and continue for a
reconsideration hearing in February 2011.

THE ABOVE DECISION IS NOT APPEALABLE.

Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies
may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

cc:    Offender Processing Unit
       300 Indiana Avenue, N.W., Suite 2070
       Washington, D.C. 20001

*Just got both of these today*
*Along with this letter.*

---

DUNN 18046-016                          -1-                          Clerk:   MDR
Queued: 05-21-2008 08:20:35 BOP-Hazelton USP | USPO-Offender Processing Unit, 300 Indiana Avenue |

*F-1*

USPC        2/22/2008   7:00    PAGE 1/2    Fax Server

U.S. Department of Justice                 **Notice of Action**
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

| | |
|---|---|
| Name: DUNN, Keith | Institution:   Hazelton USP |
| Register Number: 18046-016 | |
| DCDC No: 252-857 | Date:       February 21, 2008 |

As a result of the hearing conducted on January 31, 2008, the following action was ordered:

Deny parole. Continue to a Three-Year Reconsideration Hearing in February 2011.

**REASONS:**

Your Current Total Guideline Range is 175-225 month(s). See the attached sheet for the components that make up your Current Total Guideline Range. These components are your Base Point Score, Base Point Score Guideline Range; Months Required to Serve to Parole Eligibility Date; Disciplinary Guidelines (if applicable); and Superior Program Achievement Award (if applicable).

You have been in confinement as a result of your current offense behavior for a total of 175 months as of February 6, 2008.

After consideration of all the factors and information presented a decision outside the Current Total Guideline Range at this consideration is not found warranted.

THE ABOVE DECISION IS NOT APPEALABLE.

Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

cc:     CSS Data Management Group
        D.C. Court Services & Offender Supervision Agency
        300 Indiana Avenue, N.W., Suite 2070
        Washington, D.C. 20001

*Scanned & e-mailed to Unit Team & DSCC.*

## DISCIPLINARY GUIDELINES

Not Applicable

## SUPERIOR PROGRAM ACHIEVEMENT AWARD

Not Applicable

## CURRENT TOTAL GUIDELINE RANGE

**5 ——  Base Point Score**

| | |
|---|---|
| 18—24 | Base Point Score Guideline Range |
| 121 - 121 | Months Required to Serve to Parole Eligibility Date |
| 36—80 | Disciplinary Guideline Range (before last hearing) |
| less  0—0 | Superior Program Achievement Award (before last hearing) |
| 175 - 225 | Previous Guideline Range Conversion |
| 0—0 | Disciplinary Guideline Range |
| less  0—0 | Superior Program Achievement Award (if applicable) |
| **175 - 225** | **Current Total Guideline Range** |

| Base Point Score Guideline Range | |
|---|---|
| Score | Guideline Range |
| 3 or less | 0 months |
| 4 | 12-18 months |
| 5 | 18-24 months |
| 6 | 36-48 months |
| 7 | 54-72 months |
| 8 | 72-96 months |
| 9 | 110-140 months |
| 10 | 156-192 months |

02/27/03 21:59:06          S PAROLE->        5705227744  K1   HA

U.S. Department of Justice
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland  20815-7201

**Notice of Action**

(202) 741-8802

U-3

5 yrs.

Institution:  Lewisburg USP

Name: DUNN, Keith
Register Number: 18046-016
DCDC No: 259-857

Date:    February 27, 2003

In the case of the above-named, the following parole action was ordered:

Deny parole.  Continue to a Reconsideration Hearing in January 2008, after the service of 60 months from your hearing date of January 31, 2003.

**REASONS:**

Your Total Guideline Range is 175-225 month(s).  See the attached sheet for the components that make up your Total Guideline Range.  These components are your Salient Factor Score; Base Point Score; Base Point Score Guideline Range; Months Required to Serve to Parole Eligibility Date; Disciplinary Guidelines (if applicable); and Superior Program Achievement Award (if applicable).

You have been in confinement as a result of your current offense behavior for a total of 115 months as of January 31, 2003.

After consideration of all factors and information presented, a decision outside the Total Guideline Range at this consideration is not found warranted.

**THE ABOVE DECISION IS NOT APPEALABLE.**

Copies of this Notice are sent to your institution and to your supervising officer.  In certain cases, copies may also be sent to the sentencing court.  You are responsible for advising any others you wish to notify.

cc:    Sharon Barnes-Durbin, SCSA
       CSS Data Management Group
       D.C. Court Services & Offender Supervision Agency
       300 Indiana Avenue, N.W., Suite 2149
       Washington, D.C. 20001

Clerk:   VAH

DUNN 18046-016                          -1-

## SALIENT FACTOR SCORE (SFS-98)

__Your Pts   Salient Factor Score (SFS-98) Item Explanations__

**3**   **A** - Prior convictions/adjudications (adult or juvenile) None = 3; One = 2; Two or three = 1; Four or more = 0

**2**   **B** - Prior commitments of more than thirty days (adult or juvenile) None = 2; One or two = 1; Three or more = 0

**2**   **C** - Age at commencement of the current offense/prior commitments of more than thirty days (adult or juvenile) (see table below for an explanation)

**1**   **D** - Recent commitment free period (three years)
No prior commitment of more than thirty days (adult or juvenile), or released to the community from last such commitment at least three years prior to the commencement of the current offense = 1; Otherwise = 0

**1**   **E** - Probation/parole/confinement/escape status violator this time
Neither on probation, parole, confinement, or escape status at the time of the current offense; nor committed as a probation, parole, confinement or escape status violator this time = 1; Otherwise = 0

**0**   **F** - Older offenders
If the offender was 41 years or more at the commencement of the current offense (and the total score from Items A-E above is 9 or less) = 1; Otherwise = 0

**9**   Salient Factor Score (SFS-98) (sum of points for A-F above)

### BASE POINT SCORE

__Your Pts   Base Point Score Category Explanations__

**0**   **I** - Contribution from Salient Factor Score
10-8 (Very Good Risk) = +0; 7-6 (Good Risk) = +1; 5-4 (Fair Risk) = +2; 3-0 (Poor Risk) = +3

**2**   **II** - Current or Prior Violence
Violence in current offense and any felony violence in two or more prior offenses = +4; Violence in current offense and any felony violence in one prior offense = +3; Violence in current offense = +2; No violence in current offense and any felony violence in two or more prior offenses = +2; Possession of firearm in current offense if current offense is not scored as a crime of violence = +2; No violence in current offense and any felony violence in one prior offense = +1

**3**   **III** - Death of Victim or High Level Violence (Category III points are added to points scored in Categories I and II)
Current offense was high level or other violence with death of victim resulting = +3; Current offense involved attempted murder or violence in which death of a victim would have been a probable result = +2; Current offense was other high level violence = +1

**5**   Base Point Score (sum I-III above)

---

DUNN 18046-016                              -2-                          Clerk:  VAH

F
08 - 1432
RMC

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

## I (a) PLAINTIFFS

Keith L. Dunn
Federal Register No. 18046-016
United States Penitentiary - Hazelton

## DEFENDANTS

Edward F. Reilly, Jr. et al.
United States Parole Commission

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** _____Preston_____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY) _____Montgomery_____
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

N/A

Case: 1:08-cv-01432
Assigned To : Collyer, Rosemary M.
Assign. Date : 8/18/2008
Description: Pro Se Gen. Civil

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
Plaintiff

○ 3 Federal Question
(U.S. Government Not a Party)

◉ 2 U.S. Government
Defendant

○ 4 Diversity
(Indicate Citizenship of
Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may
be selected for this category of case
assignment.

*(If Antitrust, then A governs)*

◉ **E. General Civil (Other)**     OR     ◉ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☒ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or
defendant
☐ 871 IRS-Third Party 26
USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure
of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced &
Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
Exchange
☐ 875 Customer Challenge 12 USC
3410
☐ 900 Appeal of fee determination
under equal access to Justice
☐ 950 Constitutionality of State
Statutes
☐ 890 Other Statutory Actions (if
not administrative agency
review or Privacy Act

9

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ **530 Habeas Corpus-General**<br>☐ **510 Motion/Vacate Sentence** | ☐ **442 Civil Rights-Employment**<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ **895 Freedom of Information Act**<br>☐ **890 Other Statutory Actions**<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ **152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans)** |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ **710 Fair Labor Standards Act**<br>☐ **720 Labor/Mgmt. Relations**<br>☐ **730 Labor/Mgmt. Reporting &<br>Disclosure Act**<br>☐ **740 Labor Railway Act**<br>☐ **790 Other Labor Litigation**<br>☐ **791 Empl. Ret. Inc. Security Act** | ☐ **441 Voting (if not Voting Rights<br>Act)**<br>☐ **443 Housing/Accommodations**<br>☐ **444 Welfare**<br>☐ **440 Other Civil Rights**<br>☐ **445 American w/Disabilities-<br>Employment**<br>☐ **446 Americans w/Disabilities-<br>Other** | ☐ **110 Insurance**<br>☐ **120 Marine**<br>☐ **130 Miller Act**<br>☐ **140 Negotiable Instrument**<br>☐ **150 Recovery of Overpayment &<br>Enforcement of Judgment**<br>☐ **153 Recovery of Overpayment of<br>Veteran's Benefits**<br>☐ **160 Stockholder's Suits**<br>☐ **190 Other Contracts**<br>☐ **195 Contract Product Liability**<br>☐ **196 Franchise** | ☐ **441 Civil Rights-Voting<br>(if Voting Rights Act)** |

**V. ORIGIN**  *KLD*

● **1 Original Proceeding**  ○ **2 Removed from State Court**  ○ **3 Remanded from Appellate Court**  ● **4 Reinstated or Reopened**  ○ **5 Transferred from another district (specify)**  ○ **6 Multi district Litigation**  ○ **7 Appeal to District Judge from Mag. Judge**

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

Plaintiff seeks to vindicate rights protected by the Ex Post Facto Clause of Article 1, Section 9 of the United States Constitution.

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    **DEMAND $** _____ Check YES only if demanded in complaint  **JURY DEMAND:**   **YES** ☐  **NO** ☒

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  **YES** ☐  **NO** ☒  If yes, please complete related case form.

**DATE** August 18, 2008     **SIGNATURE OF ATTORNEY OF RECORD** _(signature)_

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
#### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.     COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.